UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STELLA VARGAS,<br><br>       Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>       Defendant. | Case No.: 1:11-cv-02085 - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 16)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF STELLA VARGAS |

      Stella Vargas ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in assessing her credibility. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the ALJ's decision is **AFFIRMED**, and Defendant's motion for summary judgment (Doc. 16) is **GRANTED**.

### PROCEDURAL HISTORY

      Plaintiff filed an application for supplemental security income on October 24, 2008, alleging disability beginning January 15, 1991. (Doc. 12-6 at 2). The Social Security Administration denied her claim initially and upon reconsideration. (Doc. 12-5). After requesting a hearing, Plaintiff testified before an ALJ at a hearing held May 18, 2010. (Doc. 12-3 at 36). The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on July

1

30, 2010.  *Id.* at 23-33.  Plaintiff requested a review by the Appeals Council of Social Security, which found no reason to review the ALJ's decision on February 29, 2011.  *Id.* at 10.  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on December 16, 2011, seeking review of the Commissioner's decision.  (Doc. 1).  On July 23, 2012, Plaintiff filed her opening brief in the action, seeking review of the Commissioner's decision.  (Doc. 15).  Defendant filed a motion for summary judgment on August 29, 2012, asserting the ALJ applied the proper legal standards.  (Doc. 16).

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would
be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

A.    **Relevant Medical Opinions**

Dr. Steven Stoltz performed a consultative internal medicine evaluation on December 11, 2008.  (Doc. 12-8 at 25-30).  Plaintiff told Dr. Stoltz she had right shoulder pain since August 2008, which was "made worse with lifting or reaching out for objects."  *Id.* at 26.  Dr. Stoltz observed Plaintiff "was alert, cooperative and well oriented in all spheres."  *Id.* at 27.  Plaintiff's range of motion was within normal limits in all extremities, with the exception of flexion and abduction of her right shoulder and left knee, with which she had a "slight" decrease in motion.  *Id.* at 28.  Dr. Stoltz determined Plaintiff's strength was "5/5 in all extremities."  *Id.* at 29.  Based upon the examination, Dr. Stoltz opined Plaintiff could "do occasional reaching overhead with the right hand and frequent reaching in all other directions."  *Id.*  According to Dr. Stoltz, Plaintiff had "no other restrictions."  *Id.*

Dr. Ekram Michiel conducted a psychiatric evaluation on December 20, 2008.  (Doc. 12-8 at 35-37).  Plaintiff told Dr. Michiel she had depression and anxiety.  *Id.* at 35.  In addition, Plaintiff reported her brothers molested her for approximately 10 years.  *Id.*  Plaintiff stated:

> I live in the past. Sometimes I see a little girl in the corner of the room and sometimes I hear voices of little girls crying in my head. I get nervous around people and I feel panicky. I can't breathe, my heart jumps and I feel like I am going to die. I cry a lot. I feel angry a lot. Sometimes I don't sleep and sometimes I sleep but I wake up with bad dreams. During the day I can't deal with people, I like to be alone and I like to stay away from everybody.

*Id.* at 35. Plaintiff stated she took care of her personal hygiene, shopped with her nephew, and did "some household chores." *Id.* at 36. Dr. Michiel observed Plaintiff "was guarded" and "would scan the room." *Id.* She was oriented to person to place, but did not know the date. *Id.* Dr. Michiel opined Plaintiff's "[t]hought process was goal-directed" and her "[t]hought content was not delusional." *Id.* at 37. Based upon the examination, Dr. Michiel concluded Plaintiff was "able to maintain attention and concentration and to carry out simple repetitive job instructions." *Id.* However, Plaintiff was "unable to carry out an extensive variety of technical and/or complex instructions." *Id.*

On January 5, 2009, Dr. Ernest Wong completed a physical residual functional capacity assessment. (Doc. 12-8 at 38-46). Dr. Wong noted Plaintiff had a history of hepatitis C, right shoulder pain, and left knee pain. *Id.* at 38. According to Dr. Wong, Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally. *Id.* at 39. However, Plaintiff's ability to push, pull, and reach was limited due to the decreased range of motion in her shoulder in elbow. *Id.* at 39-41. Dr. Wong opined Plaintiff could stand and/or walk for about six hours in an eight-hour day, as well as sit for about six hours in an eight-hour day. *Id.* at 39. Based upon Plaintiff's "mild tenderness and swelling," as well as decreased range of motion in her left knee, Dr. Wong opined Plaintiff was could "occasionally" climb ladders, ropes and scaffolds; kneel; crouch; and crawl. *Id.* at 41, 46.

Dr. Murillo completed a mental residual functional capacity assessment and psychiatric review technique form on January 6, 2009. (Doc. 12-8 at 47-60). Dr. Murillo opined Plaintiff was moderately limited in her ability to understand, remember, and carry our detailed instructions. *Id.* at 47. In all other areas of understanding, memory, concentration, and social interaction, Plaintiff was "not significantly limited." *Id.* at 47-48. Further, Dr. Murillo found Plaintiff had "mild" limitations in her activities of daily living. *Id.* at 58. Therefore, Dr. Murillo concluded Plaintiff: "Can sustain simple and repetitive tasks with adequate pace. Able to interact with co-workers and supervises. Able to adapt to work changes and relate with supervisors and others." *Id.* at 48.

On March 12, 2009, Dr. Ocrant reviewed the medical record, and affirmed Dr. Wong's physical residual functional capacity assessment. (Doc. 12-9 at 88). In addition, Dr. Ikawa reviewed the medical evidence, and affirmed Dr. Murillo's mental residual functional capacity assessment on March 19, 2009. *Id.*

**B.    Hearing Testimony**

Plaintiff testified before the ALJ at a hearing held May 18, 2010. (Doc. 12-3 at 36). Plaintiff testified she worked formerly picking grapes and walnuts, which she began as a child when her father took her to the fields. *Id.* at 40. Plaintiff said: "Basically I have to work because I was forced to as a little girl." *Id.* at 41. However, she reported she had not worked since 1995. *Id.*

According to Plaintiff, she would "get real upset, real angry real quick." (Doc. 12-3 at 40). Plaintiff explained she was "like a light switch" and would "go off and on, off and on, off and on." *Id.* at 42. She said that all she "want[ed] to do is sleep," and she would "stay in a dark room." *Id.* She said she rented a room in a house from a man named Clarence, who helped her keep a cell phone so she could talk to the doctor and be located if anything happened. *Id.* at 42, 54. Plaintiff reported that her niece, who lived nearby and owned a housecleaning business, helped her clean, but she was able to wash her clothes and go to the store with her niece. *Id.* at 43, 48.

Plaintiff testified she did not like to go out because she felt like people were following her and talking about her. (Doc. 12-3 at 42, 56). Although she used public transportation, she said she had "to sit way in the back" because she was "afraid of people." *Id.* at 56.

In addition, Plaintiff said she could not concentrate, and would forget what she was talking about or doing. (Doc. 12-3 at 40, 49). For example, Plaintiff said she did not cook because she forgot food on the stove and "almost caught the house on fire." *Id.* at 49. She stated that her difficulties with concentration date back to when she was in school and could not focus because she "was so afraid to go home." *Id.*

She reported that she went to a therapist and psychiatrist because she was "real depressed" and would "think a lot about suicide." (Doc. 12-3 at 43-44). Plaintiff said the doctor gave her medication that was "not working" because she could be watching television and have flashbacks to her childhood. *Id.* at 44. Plaintiff testified she tried to "self-medicate" so she would not "have to deal

with life," and she went through a formal treatment program for substance abuse, which she finished about two years before the hearing. *Id.* at 44-45. She reported that she had relapsed several times after completing the program, but recovered by talking to her therapist. *Id.* at 45.

Vocational expert Cheryl Chandler ("VE") testified after Plaintiff at the hearing. (Doc. 12-3 at 58). The VE observed Plaintiff did not have relevant past work to be characterized by the *Dictionary of Occupational Titles*.[1] *Id.* at 58-59. Accordingly, the ALJ asked the VE to consider several hypotheticals, based upon "an individual who has the same vocational profile as the claimant as far as age, education and work experience." *Id.* at 60.

First, the VE considered a person who could perform medium work, but could not use her right arm or left leg to push or pull more than occasionally. (Doc. 12-3 at 60). Also, the person could occasionally climb ladders, ropes or scaffolds; kneel; crouch or crawl. *Id.* The VE explained that she would "probably go towards the light jobs" given the limitations with pushing and pulling. *Id.* at 61. As specific examples, the VE opined Plaintiff could perform work in retail sales, *DOT* 299.677-010; as a counter clerk, *DOT* 295.367-026; and a cashier, *DOT* 211.426-010. *Id.*

Next, the VE considered an individual who, in addition to the above, was "limited to work that has no more than occasional interaction with the general public." (Doc. 12-3 at 62). The VE opined such limitations would preclude the jobs identified, but other work at the "unskilled light level" could be performed. *Id.* For example, the individual could perform work as a silverware wrapper, *DOT* 318.687-046; food preparation worker, *DOT* 311.674-014; and light housekeeping/ office cleaner, *DOT* 381.687-030. *Id.*

Hypothetical three added the "limitation of no more than occasional interaction with coworkers." (Doc. 12-3 at 62-63). The VE explained she "would take her out of the food jobs," but the cleaning was "more of an occasional contact" because the people worked with objects rather than with each other. *Id.* at 63-64. The individual could also perform work in production and hand

---

[1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

packaging, with the numbers of jobs available reduced to account for those that involved more than minimal interaction. *Id.* at 63. Further However, the VE explained she "would be hard pressed to come up with the jobs" that were very isolated and involved "basically almost no contact." *Id.*

Last, the VE considered a person who "due to problems with attention and concentration, persistence and pace," would be "off task . . . 10 percent of the workday." (Doc. 12-3 at 65). The VE determined there would not be jobs available for such an individual. *Id.*

## C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity since the application date of September 4, 2008. (Doc. 12-3 at 21). Second, the ALJ found Plaintiff had the following severe impairments: major depressive disorder; post-traumatic stress disorder; and history of polysubstance abuse. *Id.* These impairments did not meet or medically equal listings 12.04, 12.06, or 12.09. *Id.* Next, the ALJ determined Plaintiff had "the residual functional capacity$^2$ to perform the full range of medium work as defined in 20 C.F.R. 416.967(c)$^3$ except for the inability to perform more than unskilled tasks on a sustained basis, secondary to her mental impairments." *Id.* at 22. Plaintiff did not have any past relevant work to which she could return. *Id.* at 25. However, the ALJ determined Plaintiff could perform "jobs that exist in significant numbers in the national economy." *Id.* at 25. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 26.

## DISCUSSION AND ANALYSIS

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Here, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 12-3

---

[2] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). The residual functional capacity is a determination of what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545.

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

7

at 24). However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible . . ." *Id.* Plaintiff asserts, "The ALJ improperly assessed her subjective symptom testimony in assessing the residual function capacity," and failed to comply with the proper legal standards. (Doc. 14 at 5-6).

An adverse finding of credibility must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms only because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. In addition, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834.

Factors that may be considered include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, the ALJ considered the objective medical evidence and Plaintiff's failure to attend medical appointments and comply with treatment. (Doc. 12-3 at 24-25).

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

8

2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Here, the ALJ did not base her decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination").

Although Plaintiff testified she was unable to concentrate, the ALJ noted: "Dr. Michiel stated that the claimant was able to maintain attention and concentration" during his consultative examination. (Doc. 12-3 at 23). In addition, the ALJ observed, "The claimant's conditions are mild to moderate, stable and controlled, as opined by the DDS physician." *Id.* at 24. Therefore, the ALJ carried her burden to "explain what evidence undermines the testimony." *See Holohan*, 246 F.3d at 1208. Thus, the objective medical evidence was a proper consideration by the ALJ in determining Plaintiff's credibility.

*Failure to comply with treatment*

Plaintiff asserts, "The record documents that Ms. Vargas generally took her medications as prescribed." (Doc. 14 at 9) (citing AR 238, 328, 337, 357). Therefore, Plaintiff contends, "The articulation of the ALJ is not supported by the record." *Id.* On the other hand, Defendant asserts, "Plaintiff's conduct is inconsistent with her allegations of disabling mental impairments and the ALJ properly took that into account when discounting her credibility." (Doc. 16 at6).

The Ninth Circuit explained, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony. *Fair*, 885 F.2d at 603. Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a plaintiff's subjective complaints lack credibility. *Id.*; *see also Bunnell*, 947 F.2d at 346. Here, the ALJ based her credibility determination, in part, upon Plaintiff's failure to keep appointments and take prescribed medication. (Doc. 12-3 at 23-25).

Specifically, the ALJ observed treatment notes from the State of California Department of Corrections "document more than a few missed appointments." (Doc. 12-3 at 23). The ALJ noted: "On August 6, 2009, October 1, 2009, November 12, 2009, December 10, 2009, December 18, 2009, January 15, 2010, and February 26, 2010, the claimant missed her appointments without any valid explanations." *Id.* at 22. Further, the ALJ observed Plaintiff failed to keep six other appointments between September 2009 and March 2010. *Id.* The ALJ noted also Plaintiff's "lack of maintenance of prescribed medication." *Id.* at 24. Therefore, the ALJ's conclusion that Plaintiff had a history of not complying with treatment was supported by medical evidence, and a clear and convincing reason for rejecting Plaintiff's testimony.

## CONCLUSION AND ORDER

The ALJ satisfied the burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court, because the ALJ applied the proper legal standards and her findings are supported by substantial evidence in the record. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's motion for summary judgment (Doc. 16) is **GRANTED**;
2. The decision of the Commissioner of Social Security is **AFFIRMED**; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Stella Vargas.

IT IS SO ORDERED.

Dated: **September 25, 2012**          **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE